Leila MOURNING et al., Plaintiffs-Appellees,

v.

FAMILY PUBLICATIONS SERVICE, INC., Defendant-Appellant.

No. 71–1150.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1971.

L. Edward McClellan, Larry S. Stewart, Miami, Fla., Robert S. Rifkind, New York City, William S. Frates, Frates, Floyd, Pearson & Stewart, P.A., Miami, Fla., for defendant-appellant; John W. Barnum, Robert D. Joffe, Richard de Saint Phalle, Cravath, Swaine & Moore, New York City, of counsel.

Philip Coller, Miami Beach, Fla., M. Donald Drescher, South Miami, Fla., Leonard Helfand, Legal Service Senior Citizens, Inc., Miami Beach, Fla., for plaintiffs-appellees.

Alan S. Rosenthal, Michael C. Farrar, Attys., L. Patrick Gray, III, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., for amicus curiae.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

COLEMAN, Circuit Judge:

The validity of Regulation Z,[1] promulgated by the Federal Reserve Board under the Truth-In-Lending Act,[2] is the material issue in this appeal. The District Court held for validity. We reverse.

## I

### The Facts

Appellant, Family Publications Service, Inc., is a Delaware Corporation engaged in the interstate business of soliciting subscriptions and offering contracts for the sale and delivery of a large number of well known periodicals.

The appellee Leila Mourning, is a seventy-three year old widow having her domicile in Dade County, Florida.

Under appellant's method of conducting its business for the sale and delivery of well known periodicals, the customer under a standard form contract agrees to receive his particular magazine selections for 48 (or 60) months and to pay for them over the first 24 (or 30) months. Under normal operating circumstances, the appellant expects to receive a prepayment for magazines to be delivered to the customer in the future. The only circumstances in which magazines are occasionally delivered prior to appellant's receipt of payment for them is when a customer defaults in making the prepayment. According to the appellant, these transactions, contractual in nature, for the sale and delivery of magazines do not involve the extension of credit as defined by the Truth-In-Lending Act or the imposition of a finance charge, either directly or indirectly, requiring the disclosures specified in the Truth-In-Lending Act.

On August 19, 1969, appellee entered into a written contract with the appellant for the purchase of the *Ladies Home Journal, Holiday, Life,* and *Travel and Camera.* As usual, the standard form contract required the appellee to make thirty monthly payments of $3.95 each, in return for which she would receive magazines for sixty months. The contract provided that it was non-cancellable and that failure to make the monthly payments would result in the entire balance becoming due. Said contract is the only instrument executed and existing between the parties and it does not contain a disclosure as to the total purchase price, finance charges, service charges, or the amount to be financed.

Although Leila Mourning, the appellee, received the magazines ordered, she defaulted on her contract and never made any payments beyond the initial $3.95. Consequently, her contract was cancelled by Family Publications Service, Inc., on April 15, 1970. Appellant admits contacting the named appellee on several occasions seeking to enforce the contract. In those letters, appellant explained that it had already entered her subscriptions for the entire period; that it was a financier which had fully invested in her contract and would not receive a refund from the publishers; that Mrs. Mourning would have had to pay in advance had she dealt directly with the publishers; that she had an obligation to repay appellant on her "credit" account, much the same as if

---

1. 12 C.F.R. 226.

2. 15 U.S.C. § 1601 et seq.

she had purchased any other type of merchandise; and that the entire balance of $118.50 was due.

On April 23, 1970, Mrs. Mourning filed her civil suit asserting that the appellant, Family Publications Service, Inc., had failed to make the disclosures required by the Truth-In-Lending Act and, on that basis seeking the civil penalty, including the attorney's fees, prescribed by the Act.

## II

### The Decision of the District Court

Both Mrs. Mourning and Family Publications, Inc. moved for summary judgment. The judgment went to the plaintiff, in the following language:

"THIS CAUSE having come on before me upon Motions for Summary Judgment filed by the parties, Philip L. Coller, Esq. of the Legal Services Senior Citizens Center, and M. Donald Drescher, Esq., appearing for the Plaintiff, and Peter Fay, Esq. of Frates Fay Floyd & Pearson, P.A., appearing for the Defendant, and the Court having heard argument of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law: .

### FINDINGS OF FACT

"This action is founded on the Consumer Credit Protection Act (Title I, Truth in Lending Act) 15 U.S.C. § 1601 et seq., and the Regulations duly promulgated thereunder by the Board of Governors of the Federal Reserve System (Regulation Z, 12 CFR §§ 226.1–226.12). The relief sought is recovery of a civil penalty imposed by the Act for failure to make disclosures required by the Act and its Regulations.

"There is no issue as to any material fact. Defendant admits (1) that it entered into a written standard form contract with the named Plaintiff and other members of this class; and (2) that the standard form contract did not contain the disclosures specified by the Truth in Lending Act. Further, Defendant admits contacting the named Plaintiff on several occasions subsequent to the filing of this suit to enforce collection of a debt asserted by Defendant against the Plaintiff. Defendant is engaged in the interstate business of soliciting subscriptions to magazines and offering contracts therefor. The contract on its face provides that the customer agrees to pay a stated sum over a period of 24 or 30 months, that it is non-cancellable and that 'Payments due monthly, otherwise entire balance due'.

"Plaintiff Leila Mourning entered into a standard form contract with the Defendant on August 19, 1969. Subsequent to July 1, 1969, the date the Act went into effect, a number of other individuals in Dade County entered into identical or similar contracts with the Defendant.

"The sole question presented is: 'Does the transaction here sued upon come within the scope of the Truth in Lending Act and the Regulations duly promulgated thereunder?'

### CONCLUSIONS OF LAW

"A. The Truth in Lending Act and the Regulations must be interpreted so as to be consistent with each other and with the declared Congressional purpose of the Act—'to assure meaningful disclosure of credit terms.'

"B. The uncontroverted evidence before the Court plainly demonstrates that it is the intent of the Regulation and the interpretation of the Federal Reserve Board and of the staff of the Federal Trade Commission that the transaction here in question falls squarely within the scope of the Act and its Regulations by virtue of the 'more than four installments' rule, 12 CFR § 226.2(k); F.R.B. Letter, July 24, 1969, 1 CCH, Consumer Credit Guide, §§ 30,113, 30,-114; FTC Letter, September 3, 1970 (in Court file); CLE, TRUTH IN LENDING IN FLORIDA, Chapter 2.2 (D); Tanner, Truth in Lending and Regulation Z—A Primer, 6 Ga.S.B.J. 1 (Aug. 1969).

"C. The uncontroverted facts show that Consumer credit was extended by the Defendant to the Plaintiff. The Plaintiff received a present contract right—a subscription, in exchange for a promise to pay a certain sum in more than four installments. The promise to pay is unconditional and non-cancellable, and, further, the written agreement provides that 'Payments due monthly, otherwise entire balance due'. The evidence before the Court regarding the named Plaintiff reveals that the Defendant, itself, considered the transaction to be a credit transaction, and that it was owed a debt by the Plaintiff.

"D. No constitutional question is presented by the case at bar.

"E. The answer to the question presented to the Court must be 'yes', and since the Defendant has extended 'Consumer credit' within the meaning of the Truth in Lending Act and its Regulations and has failed to make the material disclosures required by 15 U.S.C. § 1631 and 12 CFR § 226.8, the Defendant is liable to the Plaintiff for the penalties imposed by 15 U.S.C. § 1640(a).

"Accordingly, it is ORDERED AND ADJUDICATED:

"1. That the motion of Plaintiff, LEILA MOURNING, for summary judgment be and the same is granted and the Defendant's motion for summary judgment is denied.

"2. That as a penalty for its failure to provide the disclosures required by the Act and its Regulations, the Defendant shall pay to the Plaintiff, LEILA MOURNING, the sum of One Hundred Dollars ($100.00).

"3. That the Clerk of this Court shall enter final judgment in favor of Plaintiff, LEILA MOURNING, against the Defendant, FAMILY PUBLICATIONS SERVICE, INC., in the amount of One Hundred Dollars ($100.00), plus 1500.00 on behalf of Plaintiff, LEILA MOURNING, as a reasonable attorneys' fee and the costs of this action."

We have included the Findings and Conclusions because they reveal the absence of any finding that a finance charge was involved in this transaction. The defendant's answer denied the existence of such a charge, and the plaintiff did not traverse it. The long and the short of it is that the plaintiff and the court stood on the Regulation.

### III

### *The Truth-In-Lending Act, Its Statutory Scheme, and Regulation Z*

Recognizing that the full disclosure of finance charges would greatly aid consumers in deciding for themselves the reasonableness of the credit charges imposed and would thereby enable consumers to effectively shop for credit, the Truth-In-Lending Act, Title I of the Consumer Credit Protection Act, Public Law 90–321, 82 Stat. 146, was enacted by the Congress, establishing the statutory requirement that as a matter of fair play to the consumers the cost of credit should be disclosed fully, simply, and clearly. United States Code Congressional and Administrative News, 90th Congress, Second Session (1968), pp. 1962, 1965. It was the feeling of the Congress that "the informed use of credit results from an awareness of the cost thereof by consumers". 15 U.S.C. § 1601.

The basic thrust of the Truth-In-Lending Act is that each creditor who regularly extends, or arranges for his debtors in consumer transactions to defer payment of debt or to incur debt and defer its payment and who *thereby as an incident to such extension or arrangement for the deferred payment of debt imposes either directly or indirectly a finance charge for such deferred debt,* shall disclose clearly and conspicuously, in accordance with the regulations of the Board of Governors of the Federal Reserve System, to each person to whom such right of deferred payment of debt is granted and upon which right a finance charge is or may be imposed, the information required by 15 U.S.C. § 1638 (a). 15 U.S.C. § 1602(e) and (f), §

1605(a), § 1631(a). Accordingly to such section, 15 U.S.C. § 1638(a), in any consumer transaction, not under an open end credit plan, where the debtor is granted the right to defer payment of debt or to incur debt and defer its payment, *and for which right the payment of a finance charge is required of the debtor by the creditor,* the creditor shall disclose each of the following items:

1. The cash price of the item purchased, 15 U.S.C., § 1638(a) (1).

2. The amount of the down payment, 15 U.S.C., § 1638(a) (2).

3. The difference between the cash price of the item purchased and the amount of the down payment, 15 U.S.C., § 1638(a) (3).

4. All additional charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge, 15 U.S.C., § 1638(a) (4).

5. The total amount to be financed (the sum of #3 and #4), 15 U.S.C., § 1638(a) (5).

6. Amount of the finance charge, 15 U.S.C., § 1638(a) (6).

7. The annual percentage rate of the finance charge, 15 U.S.C., § 1638(a) (7).

8. The schedule of payments required, 15 U.S.C., § 1638(a) (8).

9. The charges for late payments, 15 U.S.C., § 1638(a) (9).

10. A description of any security interest involved, 15 U.S.C., § 1638 (a) (10).

In order to assure the effective operation of the statutory provisions of the Act and to assure the meaningful disclosures of credit terms so that all consumers would be able to compare more readily the various credit terms available and thereby avoid the uninformed use of credit, the Act delegated to the Board of Governors of the Federal Reserve System the authority to promulgate regulations to accomplish the above-mentioned objectives, 15 U.S.C. § 1604.

This section expressly authorized the Board of Governors to promulgate regulations containing such classifications, differentiations, or other provisions, and providing for such adjustments and exceptions for any class of transactions, as in the judgment of the Board of Governors are necessary or proper to effectively effectuate the purposes of the Truth-In-Lending Act, to prevent the circumvention or evasion of such statutory provisions, or to facilitate compliance with such provisions. In connection with the Truth-In-Lending Act's delegation of authority to promulgate regulations, the Act provided that any reference in the Act to requirements imposed by the Act included reference to the Board of Governor's regulations, 15 U.S.C. § 1602 (k).

In addition to the specification in the Truth-In-Lending Act of criminal penalties for the wilful and knowing failure of a creditor to make the required disclosures of 15 U.S.C. § 1638(a), or for failing to comply with any other requirements of the Act, 15 U.S.C. § 1611, the Act established two methods of civil enforcement. One is administrative in nature and is vested (1) in a number of federal agencies which already exercised jurisdiction by virtue of other statutory authority, over particular classes of creditors, 15 U.S.C. § 1607(a), and (2) in the Federal Trade Commission with respect to all other creditors, 15 U.S.C. § 1607(c).

The other civil remedy established by Congress was made available directly to consumers. Specifically, the Act established federal court jurisdiction over actions for a civil penalty and authorized the courts, in successful actions, to award the consumer a reasonable attorneys' fee, 15 U.S.C. § 1640(a) and (e). The amount of the civil penalty was set at "an amount equal to the sum of *twice the amount of the finance charge in connection with the transaction*", except that the penalty could not be less than $100 nor greater than $1,000, 15 U.S.C. § 1640(a).

*The Four Installment Rule
of Regulation Z*

On February 10, 1969, the Board of Governors of the Federal Reserve System implemented the Act by promulgating a set of regulations dealing comprehensively and thoroughly with all aspects of the Truth-In-Lending Act.

Within these regulations there was included a provision that the Board of Governors of the Federal Reserve System determined that the Act's disclosure requirements would be applied not only to those creditors who extend consumer credit which involves an expressly stated finance charge, *but also those who extend consumer credit for which no finance charge is stated but which pursuant to agreement, is or may be payable in more than four installments.*

The purpose, indeed the inescapable result of the Regulation, is the imposition of a conclusive presumption that those who extend credit and permit payment in four or more installments have added a finance charge for the extension of credit.

The primary question, then, is: Was such a requirement within the delegated authority of the Board?

## IV

*Our Decision*

As already stated, the Act requires that "each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part." 15 U.S.C. § 1631(a). For failure in connection with any consumer credit transaction to disclose to any person information required by 15 U.S.C. § 1638(a), the Truth-In-Lending Act imposes on such creditor civil liability, 15 U.S.C. § 1640, and in cases of wilful and knowing violation of the disclosure requirement, criminal liability, 15 U.S.C. § 1611. This particular action was brought under the civil liability provisions.

■ Mindful of the Supreme Court's decision in Federal Communication Commission v. American Broadcasting Company, 347 U.S. 284, 290, 74 S.Ct. 593, 98 L.Ed. 699 (1954), that penal statutes are to be strictly construed, and mindful that it is the duty of the judiciary to finally determine the proper construction of statutes, this Court construes 15 U.S.C. § 1631 to require that three essential elements must be found present together in a transaction before a person is obligated under the Truth-In-Lending Act to make the information disclosures listed in 15 U.S.C. § 1638(a). These three essential elements consist of the following:

First, there must be found present a *creditor* as defined by the Act, or a person who regularly extends or arranges for the extension of the right to defer payment of debt, or to incur debt and defer its payment, and for which right of deferred payment the payment of a finance charge is required, 15 U.S.C. § 1602(e) and (f).

Secondly, there must be found present a *consumer credit* transaction as defined by the Act, or a transaction in which the person to whom is extended the right to defer payment of debt or to incur debt and defer its payment is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes, 15 U.S.C. § 1602(e) and (h).

Thirdly, there must be found present a *"finance charge"* as defined by the Act, 15 U.S.C. § 1605(a), and § 1602(e) and (f).

Regulation Z provides:

"Consumer credit means credit offered or extended to a natural person, in which the money, property, or service which is subject of the transaction is primarily for personal, family, household, or agricultural purposes for which either a finance charge is or may be imposed or which, pursuant to an agreement, is or may be payable in more than four installments."

According to the brief of the United States as amicus curiae, the four installment rule in effect establishes a conclusive presumption that those who extend credit and allow payment in four or more payments have included within the price which the consumer pays for their product their cost of extending credit, notwithstanding that they purport not to levy a finance charge. Therefore, we can conclude from the Regulation promulgated by the Board of Governors of the Federal Reserve System, from the decision of the lower district court, and from the brief filed in this cause by the United States as amicus curiae, that in order for the disclosure and penalty provisions of the Truth-In-Lending Act to be applicable, all that is required is that the transaction involve the extension of credit which, pursuant to agreement, is or may be payable in more than four installments. No showing or finding of the imposition, directly or indirectly, of a finance charge is necessarily required. The presence of a finance charge is conclusively presumed from the nature of the transaction, involving payment in more than four installments.

It can be readily seen from a consideration of the four installment rule of Regulation Z as defined by the appellee and from a consideration of this Court's construction of the statutory provisions of the Truth-In-Lending Act that an inconsistency exists between the four installment rule and the Truth-In-Lending Act. On the one hand, the four installment rule requires the application of the disclosure and penalty provisions of the Truth-In-Lending Act to transactions involving the extension of credit which, pursuant to agreement, is or may be payable in more than four installments, *whether or not a finance charge is proven to have been imposed,* directly or indirectly, as an incident to the extension of credit. On the other hand, the statutory provisions of the Truth-In-Lending Act requires that a finance charge must be found present, directly or indirectly, along with the other two essential ele-

ments in a transaction before such transaction is considered to be subject to the penalty and disclosure provisions of the Truth-In-Lending Act.

■ By extending the applicability of the disclosure and penalty provisions of the Truth-In-Lending Act to transactions involving the extension or credit repayable by agreement in more than four installments, whether or not there is found in such transactions the imposition of a finance charge as an incident to the extension of credit, the Board of Governors, in our opinion, over-stepped the authority granted to them under 15 U.S.C. § 1604. The authority delegated to the Board of Governors to prescribe such regulations as they deem necessary and proper to further the purposes of the Act and to prevent the circumvention of the Act did not include the authority to make subject to the disclosure and penalty provisions of the Act transactions not involving the imposition of a finance charge, and therefore not covered within the scope of the Act.

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of the Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity", Manhattan General Equipment Company v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1935).

■ We therefore hold that the four installment rule of Regulation Z constituted an administrative endeavor to amend the law as enacted by the Congress and to thereby make the Act reach transactions which the Congress by its statutory language did not seek or intend to cover by its enactment. The effect of such an effort comes within the condemnation of decisions of the Supreme Court. The condemnation is ex-

emplified by Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959), where the Court stated:

"But the section contains nothing to that effect, and, therefore, to uphold this addition to the tax would be to hold that it may be imposed by regulation, which, of course, the law does not permit. United States v. Calamaro, 354 U.S. 351, 359, [77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394]; Koshland v. Helvering, 298 U.S. 441, 446–447, [56 S.Ct. 767, 769–770, 80 L.Ed. 1268]; Manhattan [General Equipment] Co. v. Commissioner [of Internal Revenue], 297 U.S. 129, 134, [56 S.Ct. 397, 399, 80 L.Ed. 528]."

Equally applicable to the above holdings of the United States is this Court's opinion in United States v. Marett, 5 Cir., 1963, 325 F.2d 28, 30, 31.

As previously noted, the four installment rule of Regulation Z which decrees that those who extend credit and permit payment in more than four installments have included within the price which the consumer pays for their product their cost of extending credit, notwithstanding that they purport not to levy a finance charge, creates a conclusive or irrebuttable presumption. Such a presumption states a rule of substantive law. This is in contrast to a rebuttable presumption which only states a rule of evidence and which the opposing party is entitled to overcome by proof. The Supreme Court has held that a statute which creates a conclusive presumption contravenes the Fourteenth Amendment, if enacted by the State Legislature. It violates the Fifth Amendment if enacted by the Congress.

In Schlesinger v. State of Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926), the Supreme Court struck down as violative of the Fourteenth Amendment a statute of the State of Wisconsin which provided in effect that gifts of a decedent estate made within six years of death were made in contemplation thereof. The Court, 270 U.S., at page 239, 46 S.Ct., at page 261, stated:

"The challenged enactment plainly undertakes to raise a conclusive presumption that all material gifts within six years of death were made in anticipation of it and to lay a graduated inheritance tax upon them without regard to the actual intent. The presumption is declared to be conclusive and cannot be overcome by evidence. It is no mere prima facie presumption of fact."

In Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), the Court likewise struck down a Congressional enactment which created a conclusive presumption that gifts made within two years prior to the death of the donor were made in contemplation of death, on the ground that the provision violated the Fifth Amendment of the Constitution. The Court pointed out, 285 U.S., at page 324, 52 S.Ct., at page 360, that Congress had the power to create a rebuttable presumption, and stated:

"But the presumption here created is not of that kind. It is made definitely conclusive—incapable of being overcome by proof of the most positive character."

And further the Court stated, 285 U.S., at page 329, 52 S.Ct., at page 362:

"This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."

It thus appears that Congress itself would have been without power to create the conclusive presumption which the Board of Governors seeks to accomplish in the four installment rule. It is then even more certain that an administrative agency is without authority to promulgate such a regulation. Therefore, we conclude that the four installment rule, as promulgated by an agency of the Federal Government is void because it violates the Fifth Amendment to the Constitution. Although Regulation Z was designed by the Board of Governors to prevent circumvention of the Act and

to facilitate the purposes of the Act, in its present language it exceeded the authority delegated, or which could have been delegated, to the Board and is, as presently written, void. This necessitates the reversal of the judgment below.

We further point out that since this transaction carried with it no finance charge, or cost of credit, it was without the scope of the Act, leaving aside the matter of Regulation Z, 15 U.S.C. § 1602(e) and (f).

The judgment of the District Court is reversed and remanded with directions that the complaint be dismissed.

Reversed and remanded with directions.