**Bertha RODRIGUEZ, on behalf of herself and all persons similarly situated, Plaintiff,**

**v.**

**FAMILY PUBLICATIONS SERVICE, INC., Defendant.**

**No. 71–543–AAH.**

United States District Court, C. D. California.

Nov. 16, 1972.

**191**

an initial payment of $4.40 and thirty monthly payments of $4.40 each, for which she was to receive five magazines for five years or 60 months. Although plaintiff was given the opportunity, she failed to read the contract before executing it. After making two payments of $4.40 each, plaintiff declined to make any further payments, stating to FPS that she wished to cancel her contract because her hours of employment had been reduced.

2. Plaintiff alleges that FPS failed to make disclosures required by the Truth in Lending Act, 15 U.S.C. §§ 1601–1665 (1970), and Regulation Z, 12 C.F.R. §§ 226.1–.13 (1972). Plaintiff's Complaint was filed on March 9, 1971, but was not served on FPS until July 26, 1971. Plaintiff's original Complaint and Count Three of her Amended Complaint alleged that FPS's contracts are subject to the disclosure requirements of the Act and Regulation Z because Section 226.2(k) of Regulation Z, 12 C.F.R. § 226.2(k) (1972), defines "consumer credit" to include credit which is or may be payable in "more than 4 instalments." Plaintiff's Amended Complaint, served after the United States Court of Appeals for the Fifth Circuit held the so-called four instalment rule invalid in Mourning v. Family Publications Service, Inc., 449 F.2d 235 (1971), cert. granted, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 452 (1972), added Count One and Count Two alleging that the disclosure requirements applied because the transaction involved a "finance charge". The Amended Complaint does not specify the nature of the finance charge. The different counts in the Amended Complaint assert conflicting theories as to what disclosures are required.

3. Plaintiff seeks to recover the civil penalty provided in Section 130(a) of the Act, 15 U.S.C. § 1640(a) (1970), which penalty the section specifies shall be not less than $100. Plaintiff seeks to recover that penalty not only for herself but also for each member of a class of

Henry R. Fenton and David Daar, Los Angeles, Cal., for plaintiff.

McCutchen, Black, Verleger & Shea by Jack D. Fudge, Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

Plaintiff's motion for an order that this action may be maintained as a class action and defendant's motion for an order that this action may not be maintained as a class action came on regularly for hearing on Monday, September 25, 1972; the Court having heard oral argument and having considered the memoranda of points and authorities and other papers filed on behalf of the respective parties makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff Bertha Rodriguez is a schoolteacher, who, while attending college, entered into a written contract (a copy of which is attached to the Amended Complaint as Exhibit "A") with defendant Family Publications Service, Inc. (FPS). By the terms of her contract with FPS, plaintiff agreed to make

over 250,000 customers of defendant. Plaintiff, therefore, if the action is maintained as a class action, seeks a judgment imposing liability of more than $25,000,000.

4. FPS denies the essential allegations of the Amended Complaint and asserts eight affirmative defenses. The affirmative defenses include allegations that there was no "finance charge" as asserted in Count One and Count Two; that, as to plaintiff's four instalment rule claim asserted in Count Three, if Regulation Z by its terms included FPS's transactions within its scope, then the Regulation was in this regard unauthorized by the Act and invalid; and that FPS relied in good faith upon a reasonable interpretation of the Act.

5. Plaintiff has alleged that this action may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and, specifically, subdivision (b)(3) thereof.

6. The Court finds that this action does not meet the requirements of Rule 23(b)(3) for maintenance of a class action. In particular, the Court finds (1) that the questions of law or fact common to the members of the class do not predominate over any questions affecting only individual members and (2) that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

*Conclusions of Law*

1. Rule 23 provides that to maintain an action as a class action, the plaintiff must meet the requirements of one of the three subdivisions of Rule 23(b).

■■ 2. Plaintiff contends, but has not alleged, that this action may be maintained as a class action under clause (A) of subdivision (b)(1). That clause provides that an action may be maintained as a class action if the prosecution of separate actions would create a risk of

"(A) inconsistent or varying adjudications with respect to individual

members of the class which would establish incompatible standards of conduct for the party opposing the class. . . ."

Clause (A), however, does not apply to an action for a monetary liability. *See* Note, Federal Rules of Civil Procedure: Rule 23, The Class Action Device and Its Utilization, 22 U.Fla.L.Rev. 631, 636 (1970) ("[A]ctions for money damages would not be affected by clause (A) even where the opposing party might have to pay some class members but not others."); Note, Rule 23: Categories of Subsection (b), 10 B.C.Ind. & Com.L. Rev. 539, 540 (1969) ("Thus, actions for money damages would not be a clause (A) situation. Although the opposing party may have to pay some members of the class and not other members, this kind of incompatible conduct does not fall within the specific concern of (b)(1)(A)."). Furthermore, plaintiff's concern that courts might reach inconsistent or varying adjudications as to monetary liability under Section 130(a) is unfounded. If anything, one would assume that *stare decisis* would result in uniform decisions.

■■ 3. Plaintiff further contends, but has not alleged, that this action should be maintained as a class action pursuant to clause (B) of subdivision (b)(1), which provides that an action may be maintained as a class action if the prosecution of separate actions would create a risk of

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . ."

Contrary to plaintiff's contentions, the Advisory Committee's Note to clause (B), demonstrates that the clause was intended to apply to situations, not present here, where the members of the class each have rights in a common or-

ganization, fund or contract which ought to be adjudicated together in order to avoid unfair legal or practical advantage by one over another member of the class. 39 F.R.D. 98, 100–102. Application here of clause (B) would make meaningless the requirements set forth for an action under subdivision (b)(3) because any action meeting the prerequisites of Rule 23(a) would be a precedent in a later action involving similar questions. *See* Travers & Landers, The Consumer Class Action, 18 Kan.L.Rev. 811, 823–24 (1970). Further, plaintiff's argument that the action should be maintained as a class action under clause (B) because the statute of limitations might well prevent any further individual affirmative actions was specifically rejected in the decision cited by plaintiff, Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E. D.Pa.1968). Plaintiff's theory would encourage prospective plaintiffs in actions in which maintenance of a class action is dubious under subdivision (b)(3) to delay commencement of such actions until shortly before expiration of the statute of limitations so that any ruling on a class action motion would have to come after the statute of limitations had expired.

4. Subdivision (b)(2) by its terms is not applicable to this action, and plaintiff does not claim that this action meets its requirements.

5. Plaintiff's principal argument is that this action may be maintained as a class action because it meets the requirements set forth in subdivision (b)(3). Subdivision (b)(3) sets forth two separate requirements for maintenance of a class action. First, the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and, second, the court must find that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. This action fails to meet either of those requirements.

■ (a) The questions of law or fact here common to the members of the class do not predominate over any questions affecting only individual members. Section 104 of the Act, 15 U.S.C. § 1603 (1970), provides for an exemption for extensions of credit for business or commercial purposes. That exemption will require an individual analysis of the circumstances surrounding each customer's contract with defendant to determine if it applies. Counterclaims by defendant for nonpayment of amounts due under the contracts, which would be compulsory counterclaims under Rule 13(a), would raise further difficulties, including possible defenses such as the fraud defense raised in plaintiff's reply to defendant's counterclaim here. Questions affecting only individual members, therefore, predominate over questions common to the members of the class.

■ (b) A class action is not superior to other available methods for the fair and efficient adjudication of the controversy. In Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972), Judge Marvin E. Frankel analyzed the reasons why a class action to recover the Section 130 civil penalty did not meet the "superior" requirement of subdivision (b)(3), and, in denying the plaintiff's class action motion, stated:

> "(1) there is no affirmative need or justification for such a proceeding in the actual circumstances of the case; and
>
> "(2) the allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress prescribed as the means of private enforcement." 54 F.R.D. at 414.

Judge Frankel concluded:

> "[T]he allowance of this as a class action is essentially inconsistent with

the specific remedy supplied by Congress and employed by plaintiff in this case. It is not fairly possible in the circumstances of this case to find the (b)(3) form of class action 'superior to' this specifically 'available [method] for the fair and efficient adjudication of the controversy.'" *Id.* at 416 (footnote omitted).

A similar analysis of the "superior" requirement has led the courts to deny motions to maintain actions as class actions under the Truth in Lending Act in Buford v. American Finance Co., 333 F. Supp. 1243 (N.D.Ga.1971), and Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D.Fla.1972). The holdings in the *Ratner, Buford* and *Gerlach* decisions that class actions under the Truth in Lending Act do not meet the "superior" requirement of subdivision (b)(3) have been followed in at least nine subsequent decisions: Boggs v. Alto Trailer Sales, Inc., Civil No. 71–1271 (E.D.La., Aug. 7, 1972); Grubb v. Dollar Loan Co., Civil Nos. 15550, 15976 (N.D.Ga., May 25, 1972); Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa 1972); Kriger v. European Health Spa, Inc., 56 F.R.D. 104 (E.D. Wis.1972); Roesel v. Fulton National Bank, Civil No. 15376 (N.D.Ga., May 25, 1972); Rogers v. Coburn Finance Corp., 54 F.R.D. 417 (N.D.Ga.1972); Shields v. First National Bank, 56 F.R.D. 442 (D.Ariz.1972); Shields v. Valley National Bank, 56 F.R.D. 448 (D.Ariz. 1972); and Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kan.1972). The Court is in accord with these holdings.

6. The decisions allowing class actions under the Truth in Lending Act cited by plaintiff all preceded the *Ratner* decision and did not adequately analyze the relationship between the relief provided in Section 130(a) and the "superior" requirement of subdivision (b)(3). For those reasons, the Court declines to follow the rulings in Berkman v. Westinghouse Electric Corp., Civil No. 69 C 2056 (N.D.Ill., June 25, 1970); Joseph v. Norman's Health Club, Inc., 336 F. Supp. 307 (E.D.Mo.1971); Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa. 1971); LaMar v. H & B Novelty & Loan Co., 55 F.R.D. 22 (D.Or.1972); Martin v. Family Publications Service, Inc., Civil No. 5829 (D.Vt., June 30, 1970); Richardson v. Time Premium Co., Civil No. 70–1814–Civ–JLK (S.D.Fla., Feb. 4, 1971); and Smith v. International Magazine Service of Mid Atlantic, Inc., Civil No. 71–16–F (N.D.W.Va., Oct. 29, 1971).

7. Plaintiff urges that the *Ratner* decision should be distinguished on two grounds. First, it is said that in *Ratner* the plaintiff suffered no damage, whereas here defendant benefited to the extent of approximately $130 per customer or the total amount of the payments under the contracts. Second, it is said that in *Ratner* the defendant committed a debatable and obscure violation whereas here the violation was flagrant.

■ (a) Plaintiff's theory of damage here is unsound. In the first place, plaintiff did not pay $130, although that was the contract price. Rather, she paid only $8.80 and then defaulted. Furthermore, since plaintiff has testified that she did not read her contract with defendant prior to executing it, any omission of information required by the Truth in Lending Act or Regulation Z could not have affected her decision to sign the contract. Finally, plaintiff's theory of damages ignores what plaintiff and other members of the purported class received: five-year subscriptions to five magazines. Applying plaintiff's theory to the "Master Charge" credit card involved in *Ratner*, the plaintiff there would have been "damaged" by the total amount of the purchases which he had charged to his card. Yet, as plaintiff points out, the court in *Ratner* found that the plaintiff's damages were either nonexistent or *de minimis*.

■ (b) Plaintiff's attempt to distinguish *Ratner* on the ground that this action involves a clear and certain violation of the Act and Regulation Z will

also not withstand analysis. Plaintiff's cause of action based on the four instalment rule has been rejected by the United States Court of Appeals for the Fifth Circuit without dissent in Mourning v. Family Publications Service, Inc., 449 F.2d 235 (1971), cert. granted, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 452 (1972). Even if reversed by the Supreme Court, as plaintiff argues will be the case, the unanimous Fifth Circuit decision in *Mourning* upholding the position of FPS demonstrates that the alleged violation was anything but flagrant. While plaintiff now claims that defendant clearly violated the Act because the transaction included a finance charge, she did not advance that theory in her original Complaint but added it in her Amended Complaint only after the Fifth Circuit decided *Mourning;* moreover, plaintiff has failed to identify or describe the purported finance charge in any way. Finally, while plaintiff asserts that the requirements of the Act and Regulation Z are clear, even plaintiff notes that the different counts of her Amended Complaint make inconsistent claims as to what disclosures defendant should have made.

8. Several decisions holding that class actions may not be maintained to recover civil penalties under Section 130(a) of the Truth in Lending Act have stressed the potential for abuse by attorneys from such class actions in weighing whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In Buford v. American Finance Co., 333 F.Supp. 1243, 1251 (N.D.Ga.1971), the court stated:

"[T]he plain truth is that in many cases Rule 23(b)(3) is being used as a device for the solicitation of litigation. This is clearly an 'undesirable result' which cannot be tolerated."

In Shields v. Valley National Bank, 56 F.R.D. 448, 451 (D.Ariz.1972), the court stated:

"The Truth-in-Lending Act has laudible purposes and should be strictly enforced by the Courts, but it should not be allowed to be used as means of oppression or harassment or unjust enrichment. An interpretation of the Act to allow class actions, such as sought by Mr. Shields, could be the means of curing an illness by killing the patient and in the process promoting unnecessary litigation mainly for the benefit of a few lawyers ready and willing to promote such cases."

In Wilcox v. Commerce Bank, 55 F.R.D. 134, 137 (D.Kan.1972), the court stated in holding that an action for the Section 130(a) civil penalty could not be maintained as a class action:

"In actual practice, however, it is at least debatable whether the small claimant has received much benefit from amended Rule 23. Judge Lumbard, dissenting in the Eisen case, 391 F.2d 555 (2d Cir. 1968), caustically remarked that 'the only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them.'"

*See* Shields v. First National Bank, 56 F.R.D. 442 (D.Ariz.1972). *Cf.* Botney v. American Airlines, Inc., Civil No. 70–2405–R (C.D.Cal., Dec. 9, 1970); Carlisle v. LTV Electrosystems, Inc., 54 F.R.D. 237 (N.D.Tex.1972). The Court concurs that such a potential for abuse is an additional reason why maintenance of a class action is not superior to an individual action under Section 130(a).

9. While the Court does not express any opinion on the propriety of the conduct of plaintiff's counsel in this case, the record before the Court certainly illustrates the point stressed in the decisions cited above, namely, the temptation to improper conduct offered by the horrendous liability unrelated to damages which could be created by a class action under the Truth in Lending Act.

It is therefore ordered that plaintiff's motion for an order that this action be

maintained as a class action is denied, and defendant's motion for an order that this action may not be maintained as a class action is granted.