**Dennis ALPERT, Individually and on behalf of all persons similarly situated, Plaintiffs,**

**v.**

**U. S. INDUSTRIES, INC., et al., Defendants.**

**No. 72-354.**

United States District Court,
C. D. California.

May 8, 1973.

Les J. Hartley, Century City, Cal., for plaintiffs.

Paul, Hastings, Janofsky & Walker by Oliver F. Green, Jr., Los Angeles, Cal., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER GRANTING DEFENDANTS' MOTION THAT ACTION NOT BE MAINTAINED AS A CLASS ACTION (Rule 23, F.R.Civ.P.)

HAUK, District Judge.

Defendants' motion that the action not be maintained as a class action came on regularly for hearing on April 16, 1973, before the Honorable A. Andrew Hauk, United States District Judge. Defendants were represented by their attorneys, Messrs. Paul, Hastings, Janofsky & Walker, by Oliver F. Green, Jr. Plaintiffs were represented by their attorney, Les J. Hartley. The Court having considered defendants' motion that the action not be maintained as a class action, defendants' memorandum of points and authorities in support thereof, and defendants' supplemental memorandum of points and authorities and plaintiffs' memorandum of points and authorities in opposition to said motion and all the other pleadings on file in the above-entitled action, and the matter having been orally argued by counsel for the parties and submitted to the Court for decision, and the Court having considered the law, makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

The complaint in the above-entitled action was filed February 16, 1972, on behalf of Dennis Alpert, Moreen Rogan, Julieann Egoa, Iradge Pazargad, Zelle Paul, individually, and on behalf of all

other persons similarly situated, as plaintiffs. Plaintiffs purport to represent a class of all persons who executed health studio contracts within twelve months prior to the filing of the complaint with certain entities defined as "European Health Spas", which health studios contracts allegedly contained a finance charge within the meaning of the Consumer Credit Protection Act (the Federal Truth-in-Lending Act) which was not disclosed to plaintiffs and the class in violation of the Act. The complaint further alleged that a finance charge was imposed ". . . by Universal Guardian Acceptance Corporation and/or Marshall's Credit Corporation, upon said European Health Spas, for purchasing and/or accepting the Health Studio contracts between plaintiffs and all other persons similarly situated . . ."

2. On May 18, 1972, defendants filed a motion to dismiss and, in the alternative, for a more definite statement and a memorandum of points and authorities in support thereof.

3. On or about May 18, 1972, plaintiffs filed a notice of motion and motion for a partial summary judgment on the issue of liability only and for an order maintaining the action as a class action, a memorandum of points and authorities in support of motion for partial summary judgment and a memorandum of points and authorities in support of plaintiffs' motion for an order to maintain the action as a class action under Federal Rules of Civil Procedure, Rule 23.

4. Plaintiffs admit in their memorandum of points and authorities in support of motion for partial summary judgment that the price of the health spa membership to the plaintiffs was the same, whether paid in one lump sum cash price or paid in monthly installments over a two year period.

5. On May 26, 1972, defendants filed their statement of genuine issues pursuant to Local Rule 3(g)(2) with respect to plaintiffs' motion for partial summary judgment.

6. On May 31, 1972, defendants filed the following pleadings:

a) Affidavit of Joseph A. Bond in opposition to plaintiffs' motion for a summary judgment and plaintiffs' motion for an order maintaining action as a class action.

b) Affidavit of Oliver F. Green, Jr., in opposition to plaintiffs' motion for an order maintaining action as a class action.

c) Defendants' memorandum of points and authorities in opposition to plaintiffs' motion for an order maintaining action as a class action.

d) Affidavit of Carmen Baratta in opposition to plaintiffs' motion for partial summary judgment on issue of liability only (hereinafter "Baratta Affidavit").

e) Affidavit of Larry Landsem in opposition to plaintiffs' motion for partial summary judgment on issue of liability only (hereinafter "Landsem Affidavit").

f) Affidavit of Richard D. O'Brien in opposition to plaintiffs' motion for partial summary judgment on issue of liability only.

g) Affidavit of Oliver F. Green, Jr., in opposition to plaintiffs' motion for partial summary judgment on issue of liability only.

h) Memorandum of points and authorities in opposition to motion for partial summary judgment on issue of liability only.

7. On or about June 2, 1972, plaintiffs filed a memorandum of points and authorities in opposition to defendants' motion to dismiss or, in the alternative, for a more definite statement.

8. On or about June 8, 1972, plaintiffs filed the following pleadings:

a) Supplemental affidavit of Les J. Hartley in support of plaintiffs' motion for partial summary judgment.

b) Plaintiffs' supplemental memorandum of points and authorities in support of motion for partial summary judgment.

c) Plaintiffs' supplemental memorandum of points and authorities in support of plaintiffs' motion for an order to maintain action as class action.

9. On June 9, 1973, defendants filed a supplemental memorandum of points and authorities in opposition to plaintiffs' motion to maintain action as a class action.

10. The hearing on defendants' motion to dismiss the complaint and plaintiffs' motion for partial summary judgment and plaintiffs' motion for an order maintaining the action as a class action came on for hearing on June 12, 1972. The Court, after having heard arguments, having considered all the pleadings and papers filed by the parties, and having considered the applicable law granted defendants' motion to dismiss the complaint, with leave given to plaintiffs to file an amended complaint; denied plaintiffs' motion for partial summary judgment and denied plaintiffs' motion for an order maintaining the action as a class action.

11. On or about August 4, 1972, plaintiff Dennis Alpert, individually and on behalf of the purported class, filed a first amended complaint. The other plaintiffs listed in the original complaint, Moreen Rogan, Julieann Egoa, Iradge Pazargad and Zelle Paul, were not named as plaintiffs in the first amended complaint.

12. On September 5, 1972, defendants filed a motion to dismiss the first amended complaint and, in the alternative, for a more definite statement, on the grounds, among others, that the first amended complaint failed to state a claim against any of the defendants under the Consumer Credit Protection Act; that the first amended complaint was virtually a verbatim restatement of the original complaint which the Court had held on June 12, 1972, failed to state a claim and on the ground that the first amended complaint failed to state a claim as a class action.

13. On September 5, 1972, defendants filed a memorandum of points and authorities in support of defendants' motion to dismiss.

14. On or about January 2, 1973, plaintiffs filed a memorandum in opposition to the motion to dismiss.

15. On January 8, 1973, the Court, after having considered all of the pleadings and papers filed by the parties, having heard the arguments and having considered the applicable law, granted defendants' motion to dismiss the first amended complaint for failure to state a claim against any of the defendants and for failure to state a claim as a class action, granting plaintiffs leave to file an amended complaint.

16. On or about March 2, 1973, plaintiff Dennis Alpert filed a second amended class action complaint.

17. On March 15, 1973, defendants filed a motion to dismiss the second amended complaint upon the grounds, among others, that the second amended complaint failed to state a claim against any of the defendants under the Consumer Credit Protection Act, that the second amended complaint was essentially the same as the original complaint and first amended complaint which the Court had previously held that each failed to state a claim, and that the second amended complaint failed to state a claim as a class action.

18. On March 15, 1973, defendants filed a memorandum of points and authorities in support of defendants' motion to dismiss the second amended complaint.

19. On or about March 16, 1973, plaintiffs filed a memorandum of points and authorities in opposition to defendants' motion to dismiss the second amended complaint.

20. On April 12, 1973, defendants filed a supplemental memorandum of points and authorities in support of defendants' motion to dismiss the second amended complaint.

21. On April 16, 1973, the Court having considered all of the pleadings and papers filed in this action by the parties, having heard the arguments, having been fully advised and having considered the applicable law, granted defendants' motion for an order that the action not be maintained as a class action.

22. The original complaint was filed February 16, 1972, on behalf of all persons who executed health studio contracts within twelve months prior to the filing of the complaint, that is, subsequent to February 16, 1971 (Complaint, ¶ XVI).

23. Defendant U. S. Industries, Inc., a corporation, owns 80% of the outstanding stock of Health Industries, Inc., a corporation. (Second Amended Complaint, p. 2, lines 1–3).

24. Defendant U. S. Industries, Inc., owns 100% of the stock of defendant Universal Guardian Corporation. (Second Amended Complaint, p. 2, lines 9–11).

25. Defendant Marshall Management Corporation operates and is the employer of employees who work for certain Jack La Lanne European Health Spas located in the Los Angeles area. Among these are spas known as the Van Nuys Spa located at 7132 Van Nuys Boulevard, Van Nuys; the Glendale Spa located at 202 So. Brand Boulevard, Glendale; Miracle Mile Spa located at 5364 Wilshire Boulevard, Los Angeles; Santa Monica Spa located at 1530 Wilshire Boulevard, Santa Monica. (Baratta Affidavit, ¶ 3).

26. The Van Nuys Spa, the Glendale Spa, the Miracle Mile Spa and the Santa Monica Spa each is owned by Santa Monica Swim and Health Club, Inc., a California corporation. (Baratta Affidavit, ¶ 5).

27. The stock of Santa Monica Swim and Health Club, Inc., is 50% owned by individuals who are not defendants in this action; the other 50% is owned by Spa Health Clubs, Inc., a California corporation. The stock of Spa Health Clubs, a California corporation, is 100% owned by Health Industries, Inc. (Baratta Affidavit, ¶ 6).

28. Plaintiff Dennis Alpert executed the membership contract for health studio services on February 17, 1971, with the Jack La Lanne European Health Spa located at 7132 Van Nuys Boulevard, California. It covered services for a seven year period and provided for a cash down payment of $17.00 followed by 23 successive monthly installments of $17.00 each for a total payment of $408.00. No payment other than the initial down payment of $17.00 has been made by Dennis Alpert. Dennis Alpert has been in default under the membership contract since March 1971. (Baratta Affidavit, ¶ 9).

29. At the time plaintiff Dennis Alpert entered into the installment membership contract dated February 17, 1971, he had the option of purchasing the same membership for a single lump sum cash price of $408.00 or paying the $408.00 in 24 successive monthly installments. He elected the installment contract. (Baratta Affidavit, ¶ 10).

30. Plaintiff Moreen Rogan executed the membership contract for health studio services with the Jack La Lanne European Health Spa located at 1513 Wilshire Boulevard, Santa Monica, California, on November 15, 1970. The membership contract covered services for a two year period and provided for a cash down payment of $39.00 followed by 21 successive monthly installment payments of $13.00 each. Plaintiff Rogan has been in default in her payments on the membership contract since July 1971. (Baratta Affidavit, ¶ 11).

31. At the time plaintiff Moreen Rogan entered into the installment membership contract dated November 15, 1970, she had the option of purchasing the same membership for a single lump sum cash price of $312.00 or paying the $312.00 in successive monthly installments. She elected the installment contract. (Baratta Affidavit, ¶ 12).

32. On July 25, 1970, plaintiff Julieann Egoa executed the membership contract for health studio services with the Jack La Lanne European Health Spa located at 202 So. Brand Boulevard, Glendale, California. The membership contract covered services for a seven year period and provided for 24 successive monthly installments of $17.00 each commencing November 1, 1970, for a total payment of $408.00. (Baratta Affidavit, ¶ 13).

33. At the time plaintiff Julieann Egoa entered into the installment membership contract dated July 25, 1970, she had the option of purchasing the same membership for a single lump sum cash price of $408.00 or paying the $408.00 in 24 successive monthly installments. She elected the installment contract. (Baratta Affidavit, ¶ 14).

34. On May 5, 1970, plaintiff Iradge Pazargad executed the membership contract for health studio services with Jack La Lanne European Health Spa located at 5364 Wilshire Boulevard, Los Angeles, California. The membership contract covered services for a two year period and provided for 24 successive monthly installments of $13.00 each commencing June 15, 1970, for a total payment of $312.00. Plaintiff Iradge Pazargad has been in default with respect to those monthly payments since June 15, 1971. (Baratta Affidavit, ¶ 15).

35. At the time plaintiff Iradge Pazargad entered into the installment membership contract, dated May 5, 1970, he had the option of purchasing the same membership for a single lump sum cash price of $312.00 or paying the $312.00 in 24 successive monthly install-

ments. He elected the installment contract. (Baratta Affidavit, ¶ 16).

36. On October 12, 1970, plaintiff Zelle Paul executed a membership contract for health studio services with the Jack La Lanne European Health Spa located at 202 South Brand Boulevard, Glendale, California. The membership contract covered services for a two year period and provided for payment of $312.00 in 24 successive monthly installments of $13.00 each commencing November 15, 1970. Plaintiff Zelle Paul has been in default with respect to those membership payments since November 1971. (Baratta Affidavit, ¶ 17).

37. At the time plaintiff Zelle Paul entered into the installment membership contract dated October 12, 1970, she had the option of purchasing the same membership for a single lump sum cash price of $312.00 or paying the $312.00 in 24 successive monthly installments. She elected the installment contract. (Baratta Affidavit, ¶ 18).

38. The membership contracts of plaintiffs Moreen Rogan, Julieann Egoa, Iradge Pazargad and Zelle Paul each was entered into more than one year prior to the filing of the complaint.

39. Each of the plaintiffs, including plaintiff Dennis Alpert, had the option of purchasing a seven year membership for a lump sum cash price of $408.00 or for an installment price of $408.00 paid in 24 successive monthly installments of $17.00 each, or purchasing a two year membership for a lump sum cash price of $312.00 or for an installment price of $312.00 paid in 24 successive monthly installments of $13.00 each. (Baratta Affidavit, ¶¶ 10, 12, 14, 16 and 18).

40. The cash price and the installment price for the same membership contract have always been the same irrespective of whether the contract price was paid in one lump sum payment or in installment payments. No discount for cash payments has been offered. (Baratta Affidavit, ¶ 20; First Amended

Complaint, p. 4, lines 13–14; Second Amended Complaint, p. 5, lines 10–11).

41. After the membership contracts of plaintiffs Alpert, Rogan, Egoa and Paul were executed, they were sold and assigned by the health spa to defendant Universal Guardian Acceptance Corporation at a discount. After the membership contract of plaintiff Iradge Pazargad was executed, it was sold and assigned by the health spa to defendant Marshall's Credit Corporation, at a discount. (Baratta Affidavit, ¶ 19; Complaint, p. 4, lines 4–11; Landsem Affidavit ¶¶ 3 and 5).

42. The price of a seven year contract to a member is $408.00, irrespective of whether the price is paid in one lump sum or whether the price is paid in 24 monthly installments of $17.00 each and irrespective of whether that $408.00 installment membership contract is thereafter sold, at a discount, to Universal Guardian Acceptance Corporation or to Marshall Credit Corporation.

43. The price of a two year contract to a member is $312.00, irrespective of whether the price is paid in one lump sum or whether the price is paid in 24 monthly installments of $13.00 each and irrespective of whether that $312.00 installment membership contract is thereafter sold, at a discount, to Universal Guardian Acceptance Corporation or to Marshall Credit Corporation.

44. The sale of membership contracts from the health spa to Universal Guardian Acceptance Corporation or to Marshall Credit Corporation at a discount involves commercial or business credit.

45. Any credit extended by Universal Guardian Acceptance Corporation or by Marshall Credit Corporation to the health spas is commercial credit and not consumer credit.

46. The purpose of the Consumer Credit Protection Act is set forth in 15 U.S.Code, § 1601 et seq., which provides in part:

"It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."

Since the cost to the spa member is the same whether he pays in a lump sum, or in installments, and irrespective of whether the installment contract is thereafter discounted to a finance company, there is nothing concerning which the member can "comparison shop."

47. Plaintiff Dennis Alpert, who made only one payment on his membership contract and who has been in default thereon since March 17, 1971, claims to represent a class of in excess of 100,000 persons. (Second Amended Complaint, ¶ 14(a)(1)).

48. Plaintiff seeks to recover the civil penalty provided in the Act, 15 U.S.C. § 1640(a), which the section specifies shall not be less than $100.00. Plaintiff seeks to recover that minimum $100.00 penalty not only for himself but also for each member of the class of more than 100,000 persons. Therefore, if the action is maintained as a class action, plaintiff seeks a judgment imposing liability of more than $10,000,000.

49. Plaintiff seeks to represent a class of 100,000 persons, including not only those members of the class who, like plaintiffs, are in default of their membership contracts, but also those members of the class who are not in default of their membership contracts, and, presumably, are continuing to use and enjoy the health spas pursuant to the terms of their membership contracts.

50. The class action is brought under "Federal Rule of Civil Procedure, 23(b)(1) and/or (2) and not (b)(3)." (Second Amended Complaint, p. 7, ¶ 14(a)). The class action is not brought under Federal Rule 23(b)(3).

51. The second amended complaint seeks monetary damages only, namely,

**498**

damages in twice the amount of the alleged finance charge and attorney's fees. It seeks no injunctive relief.

52. The action does not involve a common fund, common organization or contract.

## CONCLUSIONS OF LAW

■ 1. The claims of plaintiffs Moreen Rogan, Julieann Egoa, Iradge Pazargad and Zelle Paul, alleged in the original complaint, are barred by the one year statute of limitation of the Consumer Credit Protection Act, 15 U.S.C. § 1640(e) since the contract of each of those plaintiffs was entered into more than one year prior to the commencement of the action.

■ 2. The purpose of the Act is to ". . . assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." (15 U.S.C. § 1601).

3. The alleged violation is extremely debatable and technical. The membership contract, a copy of which was attached as Exhibit A to the second amended complaint, contained all disclosures required by the Act. It also contained a notation to the effect that "This contract may be assigned by Jack La Lanne's European Health Spa to any bank, acceptance corporation or finance company." The only fact not specifically disclosed, and the only fact of which plaintiff complains, is the amount his membership contract was thereafter discounted to a financial company. Even if it were possible to disclose to the member, before he executed the membership contract, the amount at which the membership contract might subsequently be discounted to a financial institution, that information would be of no value to the prospective member since the cost of the membership to him was the same, whether he paid in cash or in installments. In the case of plaintiff, his choices were either to pay $408.00 in a lump sum cash price, pay $408.00 in 24 monthly installments of $17.00 each, or not join the spa. The disclosure of the amount of the subsequent discount, if any, would not have enabled plaintiff to obtain the seven year membership at a price less than $408.00.

■ 4. The nondisclosure plaintiff complains of, namely, the amount at which his installment membership contract was subsequently discounted to some financial institution, has not resulted in any actual damage to him or to any other member. Even if the member knew the rate at which his installment membership contract would be discounted at the financial institution, there is no way he could use this information to his economic advantage since the health spas had the policy of charging a single price for the membership, with no discount for cash and with no extra charge for installment payments. The prospective member's only choice was whether or not to become a member of the health spa at that price.

5. The subsequent sale of membership contracts by the health spa either to defendant Universal Guardian Acceptance Corporation or to Marshall Credit Corporation or to any other financial company, even at discount, involves commercial or business credit which is specifically exempted from the coverage of the Act. 15 U.S.Code § 1603. That section provides that the Act does not apply to "Credit transactions involving extensions of credit for business or commercial purposes, . . .". Section 226.3 of Regulation Z, 12 C.F.R. 226, entitled "EXEMPTED TRANSACTIONS" provides that it does not apply to "Extensions of credit . . . for business or commercial purposes. . . ."

6. The subsequent sale of a member's installment contract to a financial institution at a discount does not involve "consumer credit." Regulation Z, § 226.2(k); 15 U.S.C. § 1602(h). It involves commercial credit, which is ex-

empted from the Act, 15 U.S.Code § 1603; Reg. Z, § 226.3.

7. Federal Rule 23 provides that to maintain an action as a class action, the plaintiff must meet the requirements of one of the three subdivisions of Rule 23(b).

■ 8. Plaintiff alleges that the class action is brought under Rule 23(b)(1). Clause (A) does not apply to an action for monetary liability. Since this action is for money damages, the class action may not be maintained under Rule 23(b)(1)(A). Rodriguez v. Family Publications Service, (C.D.Cal. 1972) 57 F.R.D. 189, 192 and cases therein cited; Goldman v. First National Bank of Chicago, (N.D.Ill.E.D.1972) 56 F.R.D. 587, and cases therein cited.

9. This is an action in which each of the members of the class seeks to recover damages in twice the amount of the finance charge allegedly imposed upon the member. Therefore, this action may not be maintained as a class action under Rule 23(b)(1)(B) since it is not a situation where the members of the class each have rights in a common organization, fund or contract which ought to be adjudicated together in order to avoid unfair legal or practical advantage by one over another member of the class. Rodriguez v. Family Publications Services, Inc., (C.D.Cal.1972) 57 F.R.D. 189, 192–193; Goldman v. First National Bank of Chicago, (N.D.Ill.E.D. 1972) 56 F.R.D. 587 and cases therein cited.

10. Plaintiff alleges that the class action is brought under Rule 23(b)(2). Since the action is for money damages, subdivision (b)(2) is not applicable to this action. Rodriguez v. Family Publications Service, Inc., (C.D.Cal.1972) 57 F.R.D. 189, 193; Eisen v. Carlisle & Jacquelin, (2d Cir. 1968) 391 F.2d 555, 564; Alsup v. Montgomery Ward & Co., (N.D.Cal.1972) 57 F.R.D. 89, 92; Free World Foreign Cars, Inc. v. Alfa Romeo, (S.D.N.Y.1972) 55 F.R.D. 26, 30 n., Ad-

visory Committee's Notes, 39 F.R.D. 98,102.

11. Even if plaintiff contended that this action may be maintained as a class action under Rule 23(b)(3) [and he specifically alleges that it is not brought under 23(b)(3)], the action does not meet the requirements of Rule 23(b)(3). The questions of law or fact common to members of the class do not predominate over any questions affecting only individual members. A class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Counterclaims by defendants for nonpayment of the amounts due under the contracts, which would be compulsory counterclaims under Rule 13(a), raise difficulties. It seems likely that the defendants' counterclaims against those members of the class who are in default of payment under the terms of the membership agreements will be the subject of counterclaims resulting in a large number of separate trials. Cotchett v. Avis Rent-A-Car System, Inc., (S.D.N.Y.1972) 56 F.R.D. 549.

■ 12. The presence of counterclaims raises the likelihood of a substantial number of class members seeking to be excluded from the action. . . . With the potential of the recovery or the counterclaims exceeding the possible gains from the original action, it is likely that it will be in the interest of some members of the class to "opt out". An action which forces a significant portion of the class to take active steps to exclude themselves is inappropriate. Furthermore, some members of the class may not heed the notice and will find themselves unwittingly faced with a net judgment against them. Cotchett v. Avis Rent-A-Car System, Inc., 56 F.R.D. at 553.

13. The presence of non-frivolous counterclaim creates administrative problems not merely with respect to notice but also in respect of determining the liability of which members of the

class. Lah v. Shell Oil Co., (S.D.Ohio, W.D.1970) 50 F.R.D. 198, 200.

14. If the action were to proceed as a class action under Rule 23(b)(1) or (b)(2) under which the class members may not choose to exclude themselves, the court will be faced with the same situation of several persons unwillingly being dragged into a lawsuit with the possibility of a finding of liability against them. Van Gemert v. Doeing Company, (S.D.N.Y.1966) 259 F.Supp. 125, 130.

 15. In a Truth-in-Lending action, a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Ratner v. Chemical Bank New York Trust Co., (S.D.N.Y.1972) 54 F.R.D. 412; Gerlach v. Allstate Insurance Co., (S.D.Fla.1972) 338 F.Supp. 642; Rogers v. Coburn Finance Corp., (N.D.Ga. 1972) 54 F.R.D. 417; Buford v. American Finance Co., (N.D.Ga.1971) 333 F. Supp. 1243; Kenney v. Landis Financial Group, Inc., (N.D.Iowa 1972) 349 F. Supp. 939; Shields v. Valley National Bank, (D.Ariz.1971) 56 F.R.D. 448; Wilcox v. Commerce Bank, (D.Kan. 1972) 55 F.R.D. 134, aff'd, Wilcox v. Commerce Bank of Kansas City, (10th Cir. 1973) 474 F.2d 336; Roesel v. Fulton National Bank, Civil No. 15376 (N. D.Ga. May 25, 1972); Grubb v. Dollar Loan Co., Civil Nos. 15550, 15976 (N.D. Ga. May 25, 1972); Shields v. First National Bank, (D.Ariz.1972) 56 F.R.D. 442; Greer v. Sears Roebuck & Co., Civil No. 72–80 Ch (S.D.W.Va. July 3, 1972); Kriger v. European Health Spa, Inc., (E.D.Wisc.1972) 56 F.R.D. 104; Boggs v. Alto Trailer Sales, Inc., Civil No. 71–1271 (E.D.La. Aug. 7, 1972); Haynes v. Logan Furniture Mart, Inc., Civil No. 70–C–1827 (N.D. Ill.E.D. Sept. 20, 1970); Goldman v. First National Bank of Chicago, (N.D. Ill.E.D.1972) 56 F.R.D. 587; Johnson v. Austin Furniture, Inc., Civil No. 72–C– 724 (N.D.Ill.E.D. Oct. 1972); Garza v. Chicago Health Clubs, (N.D.Ill.E.D.

1972) 56 F.R.D. 548; Rodriguez v. Family Publications Service, Inc., (C.D.Cal. 1972) 57 F.R.D. 189; Alsup v. Montgomery Ward & Co., (N.D.Cal.1972) 57 F.R.D. 89; Kroll v. Cities Service Oil Co., (N.D.Ill.E.D.1972) 352 F.Supp. 357; Hunter v. Gross Bros. Furniture, Inc., Civil No. C–71–2443 RHS (N.D.Cal. Dec. 20, 1972).

 16. The class action is not superior to an individual action under Section 130(a) of the Act by reason of the potential for abuse. Buford v. American Finance Co., (N.D.Ga.1971) 333 F. Supp. 1243, 1251; Shields v. Valley National Bank, (D.Ariz.1971) 56 F.R.D. 448, 451; Wilcox v. Commerce Bank, (D.Kan.1972) 55 F.R.D. 134, 137; Rodriguez v. Family Publications Service, Inc., (C.D.Cal.1972) 57 F.R.D. 189, 195.