William G. CARTER, Individually and on behalf of all others similarly situated, Plaintiff,

v.

PUBLIC FINANCE CORPORATION, an Alabama Corporation, Defendant.

Civ. A. No. 75–G–0446–NE.

United States District Court,
N. D. Alabama,
Northeastern Division.

Jan. 27, 1977.

Philip A. Geddes, Charles G. Spradling, Jr., Huntsville, Ala., for plaintiff.

J. R. Brooks, Ford, Caldwell, Ford & Payne, Edgar E. Smith, Humphrey & Smith, Huntsville, Ala., for defendant.

## ORDER

GUIN, District Judge.

This cause came on to be heard on the plaintiff's motion for certification of a class. For reasons to be stated, such certification is to be denied.

A class action is sought to be maintained by the plaintiff pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure. One of the requirements of Rule 23(b)(3) is that the court must, before allowing a case to proceed as a class action, find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Among the factors to be considered in making such a determination are "the interest of members of the class in individually controlling the prosecution or defense of separate actions," and "the difficulties likely to be encountered in the management of a class action."

A factor to be considered in determining "superiority" is the class members' interest in individual control of the prosecution or defense. This necessarily involves the consideration of counterclaims that may be asserted against class members. Rule 13(a), F.R.C.P., provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

Such counterclaims are "compulsory counterclaims."

In the present case, there are many of the potential class members in default on their finance contracts with the defendant; in fact, the evidence at the Rule 23 hearing indicated that 85 of the 383 potential class members were in default. As this court reads and understands Rule 13(a), F.R.C.P., in the event of a class action the defendant would be compelled to counterclaim as to each of these 85 defaulting class members or else lose its rights under the contract.

This means that instead of conducting one trial, the court—in a class action—would probably be conducting 86 separate trials, the class action and 85 counterclaims against individuals. To this court, such a situation creates "difficulties . . . in the management of a class action," Rule 23(b)(3)(D).

■ But beyond the question of difficulties for the court in the management of a class action is the "interest of members of the class in individually controlling" their cases, Rule 23(b)(3)(A). This court cannot believe that it would be in the interest of these 85 defaulting class members to have brought against them suits on their notes. The contracts they have entered with the defendant provide that if upon default the defendant brings suit to collect, then the borrowers are liable for payment of court costs and the defendant's attorneys' fees.

Thus, if this suit were to proceed as a class action, there would probably be 85 class members being sued on counterclaims. These class members would probably find themselves exposed to much greater liability on the counterclaims than they would ever stand to recover from the defendant in the class action, and probably would never choose to bring individual actions. For this reason the court does not believe a class action is in the interest of the class members, who would probably be better off by individually controlling their suits.

■ The great majority of the cases (and all of the well-reasoned cases) which have considered this question of compulsory counterclaim in this or any similar context have held as this court now holds, that such counterclaims are compulsory.

In general, the words "transaction or occurrence" traditionally have been given a liberal interpretation "in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a)." Wright & Miller, Federal Practice and Procedure: Civil § 1410, at 40 (1971).

And while most courts have refrained from trying to define the important terms in subdivision (a), many have suggested standards to employ in determining the nature of the counterclaim. Basically four tests have been recommended:

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

(4) Is there any logical relation between the claim and the counterclaim?

In the case of each of these tests, an affirmative answer to the question posed means that the counterclaim is compulsory. Federal Practice and Procedure, § 1410, at 42–43 (1971).

■ The most widely accepted of the four standards mentioned is the logical relation test. *Id.,* 48. Accordingly, any claim of one party against an opposing party that is logically related to the claim asserted by the opposing party and which is not within the exceptions listed in Rule 13(a) is a compulsory counterclaim. Although this test provides some assistance, it is not a mechanical means of determining the nature of a counterclaim. Therefore, perhaps the only realistic solution to such a problem is to examine some of the judicial applications.

In *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709 (1970), the broadness of the rule was exemplified when the court stated that the counterclaim had a logical relationship to the original claim if it arose out of the same aggregate of operative facts as the original claim, either because the same aggregate of operative facts served as a basis of both claims or the core of facts upon which the original claim rests activates additional legal rights in the party defendant that otherwise would remain dormant.

Similarly, in *United Fruit Co. v. Standard Fruit & S.S. Co.,* 282 F.Supp. 338, 339 (1968), it was determined that a transaction which was the foundation of a plaintiff's claim was not limited to the facts set forth, but included any logically related acts and conduct of the parties. Therefore, the phrases relating to compulsory counterclaims in subdivision (a) of Rule 13 have been afforded a broad and liberal construction. In light of this, it is most appropriate to examine the Truth in Lending class actions confronted with the problems of coun-

terclaims, and the manner in which they have treated them.

The majority of class action cases considering counterclaims in Truth in Lending problems have found that they are compulsory and thus necessary for proper adjudication. The effect of such a determination is that the required presence of counterclaims demands that the case be dismissed due to problems arising in regard to questions of law or fact, superiority or notice—aspects of Rule 23(b)(3) and 23(c)(2) respectively.

*Problems with the predominance of questions of law or fact under Rule 23(b)(3).*

As of this date, there is only one decision, *Rodriguez v. Family Publications Service, Inc.,* 57 F.R.D. 189 (1972), addressing the issue of whether questions of law or fact common to the class members predominate over questions affecting individual members with respect to problems raised by the assertion of counterclaims. In determining that questions affecting individual members of the class were predominant over questions common to class members, the court stated simply that defendants' counterclaims for nonpayment of amounts due under certain contracts would be considered compulsory under Rule 13(a). There was no analysis or attempt to rationalize the conclusion.

While *Rodriguez* did not refer to it, many Truth in Lending class actions have cited the antitrust case of *Cotchett v. Avis Rent A Car System, Inc.,* 56 F.R.D. 549 (1972) as authority for the determinations of various issues. Therefore, perhaps the *Cotchett* case can provide some understanding for the court's finding that the counterclaims were compulsory. The circumstances of the case indicated that one Cotchett brought a class action against three car rental agencies, individually and as representatives of all such agencies, for violation of the Sherman and Clayton Acts by allegedly being involved in setting an illegal assessment, or $1.00 surcharge, on all automobile rentals in the city of New York, thus defrauding the class of plaintiffs (estimated as being be-

tween 500,000 and 1,500,000) composed of individuals who paid the $1.00 in connection with car rental transactions. These facts indicate that the situation is similar to the typical class suit in Truth in Lending cases—a large number of potential class members with small claims. *Cotchett* also included counterclaims against individual members of the plaintiff class, alleging that they were liable to defendants for unpaid parking tickets assessed or assessable against defendants, for uninsured damage to the rented automobiles, for rental bills, and for costs incurred in seeking collection of these. Accordingly, this case is also similar to Truth in Lending class actions involving counterclaims—the presence of asserted counterclaims for alleged unpaid balances owed by certain plaintiffs to the opposition.

In concluding that the issues common to the class did not predominate over individual questions, the court based its rationale on the traditionally liberal interpretation requiring a counterclaim with a logical relationship to the original transaction or occurrence to be treated as compulsory in nature. 3 Moore's Federal Practice ¶ 13.13, at 33–34 (2d ed. 1969), cited in *Cotchett, supra,* at 552. More specifically, the court felt compelled to treat the counterclaims as compulsory and not permissive, since they arose out of the same transactions or occurrences forming the basis of the original complaint; i. e., the rental transactions.

*Problems with the superiority aspect of Rule 23(b)(3).*

The majority of Truth in Lending cases considering the issue of counterclaims and their relation to the superiority consideration of Rule 23(b)(3) have determined that the presence of such counterclaims renders, or may render, the class action inferior to other methods of adjudication. Although they raise and discuss the issue, the courts avoid giving any well-reasoned analysis in reference to their decisions to treat or consider the counterclaims as compulsory. Some cite *Cotchett v. Avis Rent A Car System, Inc., supra,* as authority. *Turoff v. Union Oil Co. of Cal.,* 61 F.R.D. 51, 57

(1973); *Alpert v. U. S. Industries, Inc.,* 59 F.R.D. 491, 499 (1973); *Considine v. Park National Bank,* 64 F.R.D. 646, 648 (1974). However, most simply state that the counterclaims are compulsory and proceed to expound on the repercussions which destroy superiority. Basically, there are three such undesirable results pointed out in the cases.

An initial problem is the administrative difficulty raised by numerous compulsory counterclaims. Their presence creates general difficulties in terms of judicial efficiency and manageability. *Alpert v. U. S. Industries, Inc.,* 59 F.R.D. 491 (1973); *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602 (1973); *Turoff v. Union Oil Co. of Cal.,* 61 F.R.D. 51 (1973); *Considine v. Park National Bank,* 64 F.R.D. 646 (1974).

A second problem appears in the case of *Alpert v. U. S. Industries, Inc., supra,* at 499. The court was of the opinion that the counterclaims increased the likelihood that a large number of class members might seek to be excluded, especially since the potential recovery of the counterclaims might exceed the gains from the original action. Therefore, an action which caused a significant portion of the class to take active steps to exclude themselves was inappropriate and thus an inferior mode of adjudication.

■ The final difficulty caused by the presence of counterclaims arises in regard to notice. As pointed out in the antitrust case of *Cotchett v. Avis Rent A Car System, Inc., supra,* at 553, which had counterclaims under similar circumstances in Truth in Lending cases, the counterclaims coupled with the res judicata effect of any class adjudication requires that individual notice be sent to class members. Therefore, in regard to the numbers of individuals involved—500,000 to 1,500,000 plaintiffs, over 100 defendants, and roughly 60,000 counterclaims against members of the plaintiff class—the problems of manageability appeared genuinely difficult. Similarly, where counterclaims might make it desirable for many class members to exclude themselves, some may fail to heed the notice and might find themselves faced with a new judgment against them. *Alpert v. U. S. Industries, Inc., supra,* at 499; *Cotchett v. Avis Rent A Car System, Inc., supra,* at 553; cited in *Alpert.*

■ In conclusion, the problems of administration, the complications of class members seeking exclusion, and the general complications in regard to notice, render the class action inferior to individual litigation when numerous compulsory counterclaims are present.

While the majority of courts in Truth in Lending cases confronted with the presence of counterclaims have treated them as compulsory, two recent decisions have reached opposite conclusions and have categorized them as permissive. The importance of such a distinction lies simply in the fact that in classifying a counterclaim as permissive, a court can sever the counterclaims from the original claims and preserve the class action as a superior means of adjudicating the problem.

In *Agostine v. Sidcon Corporation,* 69 F.R.D. 437 (1975), a plaintiff brought a class action against defendants for allegedly failing to make proper disclosures required under the Truth in Lending Act in regard to certain installment loans. In turn, the defendants asserted two alleged compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure because the plaintiff had defaulted on both obligations. In classifying the counterclaims as permissive the court discussed the facts of the case in view of the four tests mentioned above. Initially, the court determined that the plaintiff's claims would require a determination of whether a consumer credit transaction had taken place without requisite disclosures and that the counterclaims sought recovery of default payments on the outstanding debt obligations; therefore, the issues of law and fact raised by the claim and counterclaim were quite different. Secondly, res judicata would not bar the defendant's assertion of counterclaims against the plaintiff and prospective class members in a subsequent state court suit, because in being classified as permissive, the counterclaims could not be barred. A

third problem arose in that the evidence supporting or refuting the plaintiff's claim and the defendants' counterclaims was not substantially the same. More specifically, the evidence in support of the plaintiff's claim would be related closely to the statutory elements of the Act. In proving their counterclaims, the defendants would have to establish the underlying debt obligation and that a default had occurred. Also, the plaintiff and prospective class members would be in a position to allege many possible defenses, such as fraud, modification and unconscionability. Finally, the most commonly used logical relation test would not dictate that the counterclaims be classified as compulsory. The plaintiff's claim involved a federal statute and the defendants' counterclaims were state contract claims. Moreover, there was no authority supporting defendants' argument that a ruling in plaintiff's favor would provide a defense to a subsequent state court suit initiated by defendants to collect the default payments and expenses incurred. In short, the court did not want to become involved in factual and legal questions that were logically unrelated to the alleged Truth in Lending violations. Therefore, the counterclaims were classified permissive and severed from the original claim, which preserved the class status of the lawsuit.

A similar case, *Ball v. Connecticut Bank and Trust Co.,* 404 F.Supp. 1 (1975), involved a claim against defendant lender for failure to provide certain Truth in Lending disclosures, and a state law counterclaim by defendant against plaintiff borrower for the balance due on plaintiff's account. In treating the defendant's counterclaim as permissive, the court began its analysis by pointing out that the compulsory counterclaim definition had been broadly interpreted, which did not require an absolute identity of factual backgrounds for the two claims, but rather a logical relationship between them. *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 216; *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974); *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750

(1926). However, despite this traditionally liberal interpretation afforded the common transaction or occurrence phrase, *Ball* noted that the counterclaim for debt in Truth in Lending matters had been treated as permissive in *Roberts v. National School of Radio & Television Broadcasting,* 374 F.Supp. 1266, 1270–1271 (N.D.Ga.1974). In *Roberts,* the court broadly observed that the parties stated claims arising from the same transaction in the sense that each party was suing as a result of the other's obligations on the note involved in the case. However, the court concluded that the thrust of the two claims was so basically different that the commonly used standard for compulsoriness, i. e., logical relation test, was not met.

In view of this, the court in *Ball* noted that the only link between the claim and counterclaim was the extension of credit, but the federal claim and state counterclaim did not stand on common ground when realistically assessed. In the words of the court, any logical nexus was conceptual, abstract and a formal characterization rather than a recognition of concrete advantage to be achieved through single forum adjudication of all the parties' opposing claims; therefore, a "wooden application" of the common transaction label would not yield true judicial economy.

The trouble with the reasoning in *Roberts* is that it ignores the language of the rule and, in an effort to achieve a desired result (the certification of a class without the problems attendant to the litigation of a large number of counterclaims), simply begs the question by holding that the counterclaims are permissive rather than reasoning the matter out on the basis of the law and the plain language of the rule. Both the claim and the counterclaim arise out of one transaction—a loan. The promissory note would be essential evidence, both to support the claim and to support the counterclaim. Other than proof of default, this would be the only evidence introduced, probably, to support the counterclaim. It would likely be the only evidence introduced to support the

claim. To a very great extent, therefore, the evidence is the same as to both the claim and the counterclaim and test number (3) is substantially met (the test requiring substantially the same evidence to support or refute plaintiff's claim as well as defendant's counterclaim). This court recognizes that this has not been an uncriticized test and is not considered by the commentators and the late cases to be as good a test as number (4), "is there any logical relation between the claim and the counterclaim?" This test is likewise obviously met in this Truth in Lending case, as it will be in virtually every one. There is certainly a logical relation between a claim founded on a promissory note and a counterclaim founded upon the same note. The question is not whether both parties sue on federal causes of action. Neither is the question whether both parties sue on state causes of action. Nor is the question whether both parties sue on similar causes of action. The question is simple: "Do both actions arise out of the same transaction?" This court would not apply any of the four tests. This court can see with such clarity that both the claim and the counterclaim arise out of the same transaction that it does not need any test to aid it in finding that the claim and the counterclaim arise from the same transaction. These tests are to be used only in doubtful cases. This is not a doubtful case. The "transaction" is the loan and everything necessarily done in connection with its closing. Obviously, therefore, the requirements of compulsory counterclaim have clearly been met.

As to *Agostine* and *Ball,* both cases rely heavily upon *Roberts,* which in itself relies upon nothing but wishful thinking on the part of the court (that is, the wishful desire to arrive at a desired result). Fallacious reasoning permeates the *Agostine* and *Ball* decisions. They read essentially as complaints against the rule itself. They want to get around it. This court will abide by the rule and will not indulge either in wishful thinking or in judicial legislation to avoid its plain, clear statement and intendment. As already commented, the rea-

soning in *Agostine* that the claim is federal and the counterclaim is based on state law simply is immaterial. It is immaterial, furthermore, that the issues of law and fact raised by the claim and counterclaim are different. The only thing that matters is that they arose out of the same transaction. The rule plainly says this! It is immaterial that the evidence supporting or refuting the claim and counterclaim are not substantially the same. The rule does not require this.

Likewise, *Ball* went off on the false premise that the thrust of the two claims had to be basically the same. Only the origin (the same transaction) need be the same under the plain language of the rule. This court cannot in good conscience follow the fallacious reasoning either of *Agostine, Ball* or *Roberts.* It is not a "wooden" application of Rule 13(a) for a court to do exactly, precisely, without equivocation what the rule plainly mandates.

This court must consider the fact that if a class action were certified, then the defendant would be compelled to counterclaim against many of the class members. For reasons relating both to management and to the interest of the class members, it is the court's opinion that in this case a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), F.R.C.P.

There is no easily applicable standard to be employed in determining whether the class action is a superior vehicle for litigating consumer credit problems. Rule 23(b)(3)(A–D) provides suggestive guidelines; however, they are not intended to be exhaustive. *Shields v. First National Bank of Arizona,* 56 F.R.D. 442, 445 (D.C.1972). Likewise, courts have been afforded an opportunity to exercise a considerable amount of discretion in determining the issue of superiority. *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (1972). Therefore, it is not surprising that courts have found that the class action is a superi-

or means for adjudicating some Truth in Lending problems and inferior for others.

From the foregoing discussion, it can clearly be seen that the majority of cases, and certainly those that are better reasoned, support both the view that the counterclaims asserted in this case are compulsory and that they render the class action device inferior, rather than superior, to individual suits. This court must consider the fact that if a class action were certified, then the defendant would be compelled to counterclaim against many of the class members, to the economic damage, as discussed above, of those counterclaimed against. For reasons relating both to management and to the interest of the class members, it is the court's opinion that in this case a class action should not be certified.

The court is also aware that under the provisions of 15 U.S.C. § 1640(a)(2)(A) and (B), because of limitations imposed on recovery in a class action, a plaintiff would most likely have available a much larger recovery in an individual action than in a class action. The fact that there would be only a potentially small recovery for each class member is another proper factor to be considered in determining whether a class action is "superior," and this court has considered that factor in arriving at its decision not to certify this case to proceed as a class action.

Accordingly, it is ORDERED, ADJUDGED and DECREED that this case shall proceed as an individual action and not as a class action.