**Charles GEORGE and Paula George, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BENEFICIAL FINANCE COMPANY OF DALLAS and Beneficial Corporation, Defendants.**

Civ. A. No. CA–3–76–0628–G.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 28, 1977.

---

* The pertinent Treasury regulations were incorporated into the bond contract between Mr. Worsham and the government.

Daniel G. Fish and Sheila O'Connor, Lawrence Mealer and Thomas H. Dixon of Johnson, Larson & Dixon, Dallas, Tex., for plaintiffs.

William F. Carroll, Allen Butler and Steve R. McCown of Clark, Wester, Keller, Sanders & Butler, Dallas, Tex., for defendants.

## ORDER ON PLAINTIFFS' APPLICATION FOR CERTIFICATION OF CLASS

PATRICK E. HIGGINBOTHAM, District Judge.

This is a suit under the Truth-in-Lending Act, 15 U.S.C., § 1601, *et seq.,* in which a husband and wife ask to represent a class of borrowers in claims against Beneficial Finance Company of Dallas (loan company) and Beneficial Corporation.

When Charles and Paula George, represented by attorneys employed by Dallas Legal Services Foundation, Inc., on May 7, 1976 first filed this suit, no class allegations were made. On April 7, 1977, leave to amend was granted and the class allegation first appeared in the amended complaint which followed. The Georges wish to represent a class of all borrowers from BFC during the period of April 22, 1976 through April 22, 1977.

Charles George's income and debt picture is accurately painted in defendant's opposition to class certification.[1]

Charles George claims that contrary to 15 U.S.C., § 1601, *et seq.,* he was never furnished a statement of disclosure indicating the finance charges, annual percentage rate, and methods of computing default and

---

1. Currently, Mr. George is employed by his brother as a carpenter and painter at the rate of $5.00 per hour. However, Mr. George does not consistently work 40 hours a week, but may work anywhere from 25–40 hours. Mr. George's wife is not employed, nor is she looking for work. Thus on Mr. George's salary—which is his sole source of income—he supports himself, his wife and his two children. In addition to his limited income, Mr. George is substantially in debt. He has a mortgage on his home with monthly payments of $107. He also has an $85 per month payment owing to the Idabel National Bank of Idabel, Oklahoma, for a personal loan. The balance due on the loan is about $1,200. Mr. George also owes $11 per month to Montgomery Ward, the bal-

ance on this debt being $169, $30 per month for 16 additional months to Goodyear, a $20 per month debt to Sears on an outstanding balance of $200, and a $24 per month obligation to the Plunkett Music Co. of Fort Smith, Arkansas, on which the balance is $600. All of these debts are in addition to the plaintiffs' obligation to BFC, which is $50 per month and has an outstanding balance of $1,200. In addition to all of the above listed payments, the plaintiffs normally have the following additional monthly payments: (1) electricity—$20–$30; (2) gas—$2.85; (3) water—$10; (4) telephone—$20–$30; (5) food—in excess of $40; (6) gas and oil for automobile—$25–$30; and (7) medical expenses—approximately $35. (brief of plaintiffs filed September 22, 1977, pp. 2, 3)

delinquency charges. George does claim to have received a form notice in March, 1976 suggesting a possible problem in the disclosure statements the loan company was using and a corrected disclosure statement dated in September, 1976.

On February 9, 1976, the Seventh Circuit decided *Allen v. Beneficial Finance of Gary, Indiana,* 531 F.2d 797 (7th Cir. 1976), cert. denied, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976) holding that defendant's forms did not meet the requirements of Regulation Z.[2] The same forms were used here.

Responding to the *Allen* decision, the loan company on March 23, 1976 advised all borrowers with loans not then fully repaid and made on or after March 23, 1975 that there was a question as to the adequacy of its earlier disclosure. On September 23, 1976, the loan company furnished to each of its customers with outstanding loans a revised disclosure form and all new customers thereafter received the new form.

The loan companies urge that (1) Charles and Paula George are not members of their proposed class; (2) their claims are not typical; (3) there is a defense against the Georges distinct from defenses available against proposed class members; (4) the Georges lack the financial resources to sustain the case; and (5) that the Rule 23(b)(3) requirements of predominate issues, superiority and manageability, are not met. Finally, defendants urge that before the class claims were made, any deficiencies in their forms were corrected both by further disclosures to existing borrowers and by not using the old forms. It follows, defendants reason, that class certification could only be punitive in purpose and effect because the defects have already been remedied.

 Because the Rule 23(b)(3) requirements pose the most difficult problems, they will be dealt with first. During the time period April 22nd through September 22, 1976, 2,502 loans were made. By September 22, 1977, 409 of the loans were in default. The loan companies argue that

under Rule 13(a), F.R.C.P., suits on these notes are compulsory counterclaims. Citing *Carter v. Public Finance Corp.,* 73 F.R.D. 488 (N.D.Ala.1977), defendants urge that " . . . this means that instead of conducting one trial, the court—in a class action—would probably be conducting . . . separate trials, the class actions and . . . counterclaims against individuals."

The defendants also point to the observation in *Carter* that:

" . . . class members would probably find themselves exposed to much greater liability on the counterclaims than they would ever stand to recover from the defendant in a class action, and probably would never choose to bring individual actions . . . " *Id.,* 491.

After reflection the court is persuaded that the results reached in *Carter* are here inescapable. Some courts have concluded that a counterclaim is not compulsory if it would not have an independent jurisdictional base. That reasoning is not supported by the language or purpose of Rule 13(a). Compelling the assertion in one suit of all claims arising from common transactions serves the goal of conserving the resources of the courts and the litigants (efficiency) by resolving multiple disputes with a single presentation of facts. The suits on notes will inevitably deal with the circumstance of the execution of the notes and any representation made to "induce" the borrowing. Concededly, adherence to the literal command of Rule 13(a) here cuts against achievement of "efficiency" by defeating a class adjudication of other common issues. A contrary construction of Rule 13(a) cuts against the litigation in one forum of all claims from one transaction. It follows that we are not confronted by choices between two possible constructions—one productive of efficiency and one not.

Other courts have reasoned that class members do not become "opposing parties" within the meaning of Rule 13(a) until they file claims at the recovery phase of the

---

**2.** Specifically, the court found that the meaningful sequence requirement had not been met.

litigation, delaying until then the filing of compulsory counterclaims. See *Weit v. Continental Illinois National Bank and Trust Company of Chicago* (N.D.Ill.1973), 60 F.R.D. 5; *Wainwright v. Kraftco Corp.* (N.D.Ga.1974), 54 F.R.D. 532. However, this approach only postpones the decision as to manageability of the suit as a class action. Nothing is gained from allowing the suit to proceed as a class action knowing full well that the "damage phase" of the case would be totally unmanageable. The result even with this view of "opposing parties" is several hundred note suits before one federal court; and these suits not only would not have been in the federal forum but for the class certification but more importantly might never have been filed at all. While congressional objectives may here be clear, Rule 23 is not the procedural devise for achieving them. It is at least proper to construe Rule 23 with an eye toward achievement of substantive and procedural congruence; but if a proffered class is unmanageable it will not become manageable by semantical legerdemain. The inevitable result of such an excess is a Rule 23 tailored for each substantive claim.

Finally, one could avoid the problem by redefining the class to exclude borrowers in default. Apart from the fact that being in default is a changing [3] status, redefinition is flawed by a more fundamental concern. If there is the requisite predomination of issues common to borrowers, defining the class to include only borrowers not in default omits several hundred borrowers sharing the same interest in the same overriding issues. The notion that it is better to have "half a class than none at all" urges redefinition; its emphasis is achievement of a perceived congressional objective (substantive result) by an award of money damages. The perceived congressional objective is increased disclosure and the perceived congressional means is certification of a class—preferably one large enough to compel a defendant to alter its practices. Although redefinition would in this sense

help reach the congressional objective, the fact remains that whether a borrower is in default has little to do with his kinship with the issues whose predomination justified a class at the outset.

Nor is subclassing available. Borrowers in default do not assert claims with a common characteristic in addition to those common to the class of all borrowers. More importantly, subclassing would not alter the precipitation of counterclaims. One might argue that in Truth-in-Lending cases the specter of counterclaims is inevitably presented; that indeed the underlying cause of default may be practices the Truth-in-Lending Act was intended to exercise. Even if true the case remains impossible to manage. And critically, Charles and Paula George would be acting contrary to the interest of each class member in default. In sum the ambivalent interests of the Georges and the members of the proposed class undermine that cohesive nexus requisite to a manageable litigating unit.

■ The contention that the Georges lack the resources to finance the case demands only short shrift. The Georges, through the Legal Foundation, are able both in skill and in financial resources to finance this suit.

■ Of the remaining contentions, only class membership and the contention that the Georges' claim was not typical pose problems. The loan company urges that because Charles and Paula George did not receive the disclosure forms at all they are not members of a class of borrowers that did, relying heavily upon the recent Supreme Court decision in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

It is not necessary to here resolve this question because the "counterclaim" problem discussed above virtually begins and ends the discussion. But this court would not be so quick to read *Rodriguez* in such a mechanical way. The Georges are arguably

---

**3.** Defining the class as those not *now* in default might or might not avoid the manageability problems. If default is not fixed, the class might well expand and contract as borrowers default and cure defaults.

8

part of the statutorily defined class of borrowers protected by the Truth-in-Lending Act. Not receiving a form as distinguished from receipt of a deficient form would seem to be only a difference in the means of inflicting a commonly suffered injury—inadequate credit information. That is not to say that this difference plus others might not lead to a conclusion as to the inadequacy of representation. It is to say that this difference would not necessarily alone foreclose class representation.

■ Taking measures to correct deficient disclosures before a class allegation will not itself bar class certification. If the deficiencies are corrected, a defense against liability to the class may be available. Although there is an element of unfairness in being sued by a class after correcting the problem giving rise to the suit, whether a defense is available or not is for Congress to decide. The defense ought not be judicially created by denying class certification. And adopting defendant's argument that the class ought not be certified because certification would here be punitive, would do just that.

### SUMMARY

Although a proffered class presents some common issues, it ought not be certified as a class when certification does not produce a more efficient method of adjudicating numerous claims but instead precipitates hundreds of separate claims. This conclusion is particularly apt when the counterclaims are both numerous and diverse in the issues they present. Those who have tried "simple note" suits recognize this reality.

And finally, hanging like a black cloud over the proposed class is the circumstance that the class members in default here have no interest in seeing this case prosecuted as a class action.

For these reasons class certification is DENIED.