Carol STRANGER, on behalf of herself and all others similarly situated, Plaintiff,

v.

AMERICAN BUYERS CLUB, INC. and First Illini Acceptance Corporation, Defendants.

No. 77–1097.

United States District Court, S. D. Illinois, N. D.

Jan. 26, 1978.

Barry M. Barash, Galesburg, Ill., for plaintiff.

Wayne L. Hanold, Robert L. Burhans, Peoria, Ill., Gary A. Weintraub and Alan H. Garfield, Chicago, Ill., Heyl, Royster, Voelker & Allen, Peoria, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This complaint alleges a class action suit for a penalty for alleged violations of the Truth in Lending Act. 15 U.S.C. § 1601, et seq. Each defendant has moved to dismiss. The dispositive issue upon this particular complaint is the question whether the cause should be certified as a class action.

The basis upon which plaintiff purports to represent a class arises from the following salient facts. On October 21, 1976, she entered into a contract with defendant American Buyers Club, Inc., whereby she became a member thereof, which entitled her to benefits and privileges as stated in the contract. She made a downpayment in the amount of $39.50, and agreed to pay the

balance of the contract price in the aggregate amount of $456 in twenty-four equal installments of $19 each. A tabular disclosure upon the contract stated the cash price to be $495.50, a sum equal to the aggregate of plaintiff's downpayment and the deferred payments. That tabulation stated "None" for both the finance charge and the annual percentage rate upon the transaction. That contract was assigned to defendant First Illini Acceptance Corporation.

The theory of complaint is that the transaction was, in fact, a credit transaction, within the meaning of the Act and Regulation Z in implementation thereof. Plaintiff alleges that the Act was violated for the reasons that the identity of Illini as a creditor was not disclosed; that the discount figure upon the assignment to Illini is, in fact, a finance charge; and that the annual percentage rate, i. e., the percentage figure which application of the discount figure to the unpaid cash balance figure would yield, is not disclosed.

Plaintiff prays no individual recovery, but only the class action penalty under the Act. She purports to sue on behalf of herself and all other persons similarly situated, namely, all persons who signed substantially identical contracts with American within the limitations period, provided that such contracts were assigned to Illini and the same did not disclose the identity of Illini as a creditor and did not disclose a finance charge and an annual percentage rate as required by Regulation Z.

The respective motions to dismiss attack both the substantive basis of the complaint and the efficacy of the same as a bona fide class action.

The substantive basis for the motions must be rejected for the reasons stated in *Haskins v. American Buyers Club, Inc., et al.,* 77 F.R.D. 715, No. 77–1110, decided by this court today. The single issue remaining is the question whether the complaint should be certified as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure. Plaintiff relies upon *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974), and

*Goldman v. First Nat. Bank of Chicago,* 532 F.2d 10 (7th Cir. 1976), to support her class-action theory.

The courts have wrestled with the question of the place of the class action in Truth in Lending litigation, since the inception of the Act. The original Act made no reference to class litigation. It simply provided for individual civil penalties of not less than $100 for any violation of the Act.

The leading case of *Ratner v. Chemical Bank New York Trust Company,* 54 F.R.D. 412 (S.D.N.Y.1972), arose in that context. There the court denied class action status in a Truth in Lending suit on the grounds, first, that a class action was not the superior means for enforcing the Act, because the Act's provisions for a minimum recovery and attorney's fees obviated the need for the incentive of enforcement by class action, and, second, that the potential aggregate liability presented the prospect of a horrendous punishment for a technical violation of the Act. *Ibid.* at 416. That cause would have involved a potential class of some 130,000 persons. A like decision was reached in *Rogers v. Coburn Finance Corp. of DeKalb,* 53 F.R.D. 182 (N.D.Ga.1971). *Contra, Katz v. Carte Blanche Corporation,* 52 F.R.D. 510, 53 F.R.D. 539 (W.D.Pa.1971).

*Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336 (10th Cir. 1973), was an interlocutory appeal from an order denying class action status in that pending suit. The decision was affirmed, the court stating that the denial of class action status as being not superior to the statutory right of individual actions was a valid exercise of discretion in light of the factual allegations involved. *Ibid.* at 342, 347.

*Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974), was an appeal, *inter alia,* of a ruling by the trial court that the device of the class action is legally incompatible with the substantive purposes of the Truth in Lending Act. The court rejected that conclusion, concluding that a class action may lie under the Act and that a class action should not be rejected absent overriding reasons for preclusion of that device. *Ibid.* at 1164–1165.

*Goldman v. First Nat. Bank of Chicago,* 532 F.2d 10 (7th Cir. 1976), again presented the issue whether a denial of class action certification was a valid ruling. As in *Haynes,* the court concluded that the trial judge had based his denial of the class action device upon the erroneous legal theory that class actions are incompatible with the substantive purposes of the Act. *Ibid.* at 14–15. The court then held that a class action was the superior procedure in the particular case before it. *Ibid.* at 15–16. In the interim between the trial court's ruling, *Goldman v. First National Bank of Chicago,* 56 F.R.D. 587 (N.D.Ill.1972), and the Court of Appeals decision, the Act was amended to effect a waiver of the minimum individual recovery in a class action and to provide a ceiling for total recovery in class actions of the lesser of $100,000, or 1 per cent of the net worth of the creditor. 15 U.S.C. § 1640(a). That amendment obviated the *Ratner* court's concern over a horrendous, possibly annihilative, judgment imposed for a technical violation of the Act. The court suggests that that limiting factor does have a bearing on consideration of factors enumerated in Rule 23(b). 532 F.2d at 16.

It is noted that the cited cases, with the single exception of *Haynes,* involved open-end, credit card transactions, with classes of as many as 180,000 persons. It must also be noted that in each of the cited cases it was found, or assumed, that the requirements of Rule 23(a) were met, and that the only issue was the propriety, or impropriety, of certification of the class action under 23(b).

Neither *Haynes* nor *Goldman* should be read as mandating certification of a class action in every Truth in Lending case. It is clear that both of those cases contemplate that a trial court, in every case, must make an evaluation of the particular complaint and the particular circumstances, to determine whether a class action should be certified.

In view of the statute itself, and *Haynes* and *Goldman,* there can be no question that a class action will lie to enforce the Truth in Lending Act in a proper case. Yet, certain consummate difficulties are apparent in that concept. Paramount among such difficulties is the fact that the nominal plaintiff in a permitted class action has the power to waive, and the complaint has the effect of waiving, the individual statutory right of each class member to demand the minimum individual penalty which the statute provides. *Goldman* suggests that such individual rights are protected by the right of each member to opt out of the class. 532 F.2d at 16. Yet one must wonder how many among such persons would recognize, upon their receipt of notice of class certification, even including specific mention of this point, that each of them must take such affirmative action to prevent each his forfeiture of a statutory right.

Thus, the class action under this Act clearly does not fit into the traditional concept of class litigation. In the traditional case, there are aligned as class plaintiffs persons who are equally entitled to substantive redress, by injunctive relief, or damages, or both, for an alleged wrong directed equally or proportionally against all members of the class. The basic rights of each member are neither enhanced nor lessened by the class action format. The interests of each member of the class are precisely parallel to the rights of all. One does not expect to encounter any delict or interest which is personal to one member, or some members, of the class, but not to all. By contrast, personal factors may enter into Truth in Lending litigation which render it imperative that a court be convinced that a nominal plaintiff does assert only claims which are typical of the several claims of the class as a whole, and that such nominal plaintiff can and will, fairly and adequately, represent and protect the members of the class.[1]

1. A class action can be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

This complaint does not meet that standard. Though there are adequate allegations that the members of the class are too numerous to make joinder of all impracticable, and that common questions of law do pervade the situation to which the complaint is addressed, it appears that the claims and defenses of this plaintiff are not typical of those of the class as a whole. Under those circumstances, the court is not satisfied that this plaintiff can, or will, fairly and adequately protect the interests of the class.

In support of their motions, the defendants have filed certain affidavits which state that the gross potential class is in excess of 1,000 persons, that this plaintiff had defaulted upon her contract, and that approximately 80 persons from the total class are in default. It thus appears that this plaintiff's interests would parallel those of only a nominal percentage of the class as a whole, namely, those persons who are, like herself, in default.[2] It is obvious that the claims and defenses of this plaintiff are not typical of those of the alleged class as a whole.

A question of motivation must also bear upon this issue. Affidavits and documentary evidence submitted with the motions would indicate that the 1% of net worth limit imposed by the Act upon class recovery would reduce the prorata recovery of each class member to a sum of $7.00 to $8.00. Thus, this plaintiff, by adopting the class action format, has elected to waive, not only herself, but, potentially, for each member of the class, 92% to 93% of the statutory minimum penalty to which each is entitled under the Act. It would be improper to speculate upon this plaintiff's motivation in electing the class action format of suit. Yet it would be more grossly improper to certify this plaintiff as a representative of the whole class. It is necessary to note the possibility that the class action device may have been adopted by this plaintiff as a lever which, hopefully, might alleviate her own situation.

For the reasons stated, the motions to dismiss the complaint must be allowed.[3]

Accordingly, IT IS ORDERED that defendants' motions to dismiss are ALLOWED, and, as mandated by Rule 12(b), matters outside the pleading having been presented and considered, the clerk is directed to enter judgment for defendants on this complaint.

---

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

**2.** The affidavits to which reference is made state facts which appear from the records of the defendants, or one of them. It is recognized that this plaintiff doubtless lacks the information to either admit or deny the accuracy of the statements made, with one critical exception. She does have the information to refute their statement as to her own default, if that statement be not true.

In essence, the issue is approached in the light of the unrefuted statement that she did default on her contract and the absence of any allegation by her that all members of the alleged class are likewise in default.

**3.** In its resistance to certification of the class action, defendant Illini contends that, as to all persons in default, Rule 13(a) of the Federal Rules of Civil Procedure mandates that it file a compulsory counterclaim against each member of the class who is in default under his contract. It relies upon *Carter v. Public Finance Corp.,* 73 F.R.D. 488 (N.D.Ala.1977), and *Mims v. Dixie Finance Corp.,* 426 F.Supp. 627 (N.D. Ga.1976). It thus argues, based upon its affidavit, that 80 members of the potential class are in default, and that certification as a class action would convert this cause, in effect, into 81 suits.

It is not necessary to consider this question, which would have a bearing only upon the criteria established by Rule 23(b). The court is convinced that the basic criteria of class litigation enumerated in Rule 23(a) are not met.